ROCHE *v.* DAY.

Opinion delivered February 23, 1920.

1. APPEAL AND ERROR—CONCLUSIVENESS OF RECORD OF DECREE.—Recitals of a decree can not be shown to be incorrect by letters appended to the transcript.

2. VENDOR AND PURCHASER—NOTICE OF TIMBER CONTRACT.—Evidence *held* insufficient to show that plaintiff acquired land as *bona fide* purchaser without knowledge of the extension of a timber contract.

3. VENDOR AND PURCHASER — PURCHASE SUBJECT TO TIMBER CONTRACT.—Where a timber contract was extended before lands were sold to plaintiff, and the contract of sale gave notice of the extension, and the sale was made subject thereto, plaintiff can not question the validity of the timber contract because the timber contract was not reduced to writing until after the conveyance was made.

Appeal from Clay Chancery Court, Western District; *Archer Wheatley,* Chancellor; affirmed.

*C. T. Bloodworth* and *Edward B. Downie,* for appellant.

1.. The finding of the chancellor is clearly against the weight of the testimony.

2. Roche had no notice, actual or constructive, of the extension of time for removing the timber.

3. If the insertion of the clause, "subject to a timber contract expiring March 1, 1920," was notice to Roche, he exercised such diligence as would absolve from the charge of negligence in making inquiry with respect to this matter.

4. If there was an extension of time, the agreement thereupon was not made until long after the deed

from Trotter to Roche was executed and could not affect Roche's title.

5. The deposition of Trotter should have been quashed. 39 Cyc. 1738; 189 Pa. St. 164; 69 Am. St. 794; 72 S. C. 404; 52 S. E. 48; 88 Ala. 527, cited in 2 Pom. on Eq. Jur. (2 Ed.) 601; 108 Ark. 190. The deposition of Trotter was not signed by him as provided by law and should have been quashed.

*Oliver & Oliver,* for appellees.

1. Appellant had notice of the extension of time to March 1, 1920. See original contract made an exhibit to deposition of Schenck and a copy made an exhibit to deposition of Trotter.

2. Roche bought subject to the extension of time and knew of it. The contract between Trotter and Day was not void under the statute of frauds because the statute was pleaded. 32 Ark. 97; 105 *Id.* 638; 56 *Id.* 263. And if plead appellant could not take advantage of it. 20 Cyc. 306 L; 128 Ark. 42.

3. The deposition of Trotter was not signed, but appellant accepted the court's ruling on it.

4. Appellant was not an innocent purchaser; not a purchaser at all. The evidence is conclusive on all these points, and appellant failed to make a case of a *bona fide* **purchaser.**

HUMPHREYS, J. Appellant instituted suit against appellees in the Clay Chancery Court, Western District, to enjoin them from cutting timber on a certain tract of land, consisting of 2,463 acres in said district and county.

The bill, in substance, alleged that appellant was the owner of the land and timber standing thereon; that appellees had cut and removed, and were cutting and removing, merchantable timber therefrom and converting same to their own use, without right, to appellant's damage in the sum of $5,000; that they were not financially responsible; that they claimed the right to cut and remove the timber under a pretended extension beyond December 6, 1918, of a timber contract executed in 1911

by Minta L. Scott to T. E. Day; that, if such extension was made, appellant knew nothing of it and was an innocent purchaser of the land.

Appellees filed an answer, admitting that they had cut and removed, and were cutting and removing merchantable timber from said lands after December 6, 1918, but had cut and removed the timber under contract of date June 30, 1917, with John W. Trotter, who had purchased the lands from Minta L. Scott on May 18, 1917, extending the time for removing the timber until March 1, 1920.

The cause was submitted to the court upon the pleadings, depositions and exhibits thereto, which resulted in a finding that appellant purchased the lands with notice that the timber contract, expiring December 6, 1918, had been extended to March 1, 1920, and a decree dismissing appellant's bill for want of equity. From the finding and decree, an appeal has been duly prosecuted to this court for trial *de novo.*

The deposition of John W. Trotter was unsigned. For that reason, appellant filed a motion to quash it. The decree recites that to prevent a continuance for retaking the deposition, appellant accepted the chancellor's ruling, overruling his motion to quash the deposition. The letters appended to the transcript show that the recitals of the decree in this respect are incorrect, but the letters are no part of the record and can not be considered by the court on appeal. This court is bound by recitals contained in the record as certified; hence, must treat the deposition of John W. Trotter as evidence in the case.

The undisputed facts are as follows: In 1911, Minta L. Scott, the owner of the land, sold the merchantable timber on the land to T. E. Day under written contract, on condition he would cut and remove the timber on 200 acres each year, after a certain period, and return the same—the timber right expiring on the 6th day of December, 1918. On the 18th day of May, 1917, Scott sold the land to John W. Trotter with the aid of appellee. On the 15th day of October, 1917, appellant agreed to ex-

change an encumbered flat in Chicago for Trotter's lands in said county, subject to inspection. Appellant's broker, Chas. E. Bates, inspected the lands, and, on account of the timber being sold, refused to advise the sale unless Trotter would pay a difference of $10,000 in cash between the encumbered properties. Trotter acquiesced and a contract was executed on the 27th day of October, 1917, agreeing upon the terms of exchange. By the terms of the contract, it was to remain in the office of Robt. F. Schenck, Trotter's broker. Trotter then produced a late abstract to the lands and opinion of an attorney showing a merchantable record title, subject to certain mortgages and a timber contract of record from Minta L. Scott to appellee, expiring December 6, 1918. On the 30th day of November, 1917, Trotter paid appellant $10,-000 in cash and he and his wife executed two warranty deeds, conveying the lands to appellant without timber reservations, in exchange for the Chicago flat with a $60,000 incumbrance. The lands were chiefly valuable for the timber and of little value without it. The deeds of Trotter, conveying the lands to appellant, did not contain a timber reservation or refer to a timber contract expiring March 1, 1920.

The fact about which the evidence is in dispute is whether the contract of sale, of date October 27, 1917, contained the following clause: "Subject to a timber contract expiring March 1, 1920." Upon this disputed point, the evidence of Chas. E. Bates is pitted against that of Robt. F. Schenck and John W. Trotter. Chas. E. Bates represented appellant throughout the negotiations and consummation of the exchange of properties, and Robt. F. Schenck & Co. represented John W. Trotter in the deal.

Charles E. Bates testified, in effect, that the clause in question was not in the contract at the time he signed it for appellant; that Trotter represented to him that there was a timber contract on the land, but could not tell him, in response to repeated inquiries, when it expired; that he concluded from the abstract sent him and

the opinion of the attorney upon the title, that the timber contract shown by the abstract in which the timber rights expired on December 6, 1918, was the timber contract which Trotter represented to him as being on the lands; that he never heard of any extension of said timber contract until notified by letter from appellee T. E. Day on May 17, 1918; that the letter containing the abstract stated: "My (referring to Trotter) abstracts of that land are new ones and brought down to date;" that he called on Mr. Schenck a number of times before the institution of this suit to secure a copy of the contract, but Mr. Schenck was unable to find it, after making a thorough search; that Schenck did not find it until Mr. C. T. Bloodworth went with him to Schenck's office and told Schenck that he had had a talk with Mr. John W. Trotter only the day before and that Trotter had shown him a copy of the contract which had been sent him by Mr. Schenck; that, although a diligent search had been made by him before this statement, immediately thereafter Mr. Schenck produced the original contract which contained the clause: "Subject to a timber lease expiring March 1, 1920;" that prior to producing the contract, Schenck had stated that he did not, and could not, remember just when the timber contract expired; that in Day's letter informing him that the contract had been extended, the following clause appeared: "I have a statement from Mr. Trotter that he incorporated in his deed to you and in your contract that you took this land subject to a timber lease expiring March 1, 1920, as that is the contract I have with Mr. Trotter. Kindly let me know if this is in your deed. I have Mr. Trotter's written statement that this is so, and it is our contract with him."

Appellee testified that his original timber contract was extended by John W. Trotter, who purchased the lands from Minta L. Scott; that he assisted in the negotiations of that deal, and his remuneration was to be the extension of his timber contract with Scott from the expiration thereof to March 1, 1920; that the original agreement for this extension was made April 30, 1917, but was

not reduced to writing for about three months thereafter; that the extension agreement was reduced to writing and dated back to June 30 and signed by himself and John W. Trotter; that it was the understanding at the time that the extension should be mentioned in the deed from Minta L. Scott to John W. Trotter, which was overlooked in the preparation and execution of that deed; that he wrote letters as late as September 7, 1917, showing that the extension contract had not been reduced to writing at that time; that, under his agreement with Trotter, the timber extension had not been incorporated in the deed from Scott to Trotter, and that he therefore consulted Mr. Oliver with reference to his right to the extension; that Trotter had written him repeatedly that the extension was incorporated in his contract of exchange with appellant, as well as in his deeds conveying the lands to appellant; that, for that reason, he wrote the letter to T. E. Day, of date May 17, 1918, asking him whether the timber extension was incorporated in the deeds. The original extension contract of date June 30, 1917, is before the court for inspection of Trotter's signature, it being contended that the signature evidences the fact that it was written after he had broken his arm in the spring of 1918, and not before the contract of exchange of the properties entered into between Trotter and appellant.

John W. Trotter testified that appellant understood at the time the contract for exchange of properties was entered into that the contract was subject to a timber contract which would not expire until March 1, 1920; that the clause "subject to a timber contract expiring March 1, 1920," was in the original and copies of the contract at the time signed; that the copies were made at the time the original was executed; that he compared his copy with the original and took it away at the time; that he informed Day that the same clause was inserted in his deeds to appellant, because he thought, until after suit was brought, that Schenck had inserted it according to instructions. Trotter filed with his deposition his copy

of the contract with appellant, showing that it was made "subject to a timber contract expiring March 1, 1920." Trotter admitted receiving letters from Day in the summer and fall of 1917, relative to the extension of time for moving the timber.

Robt. F. Schenck, in the course of his testimony, produced the original contract on a printed form for the exchange of lands, entered into between appellant and John W. Trotter, in which there appears written in pen and ink under a paragraph "subject to" the following clause: "A timber contract expiring March 1, 1920." There were a number of other entries in the same color of ink and same handwriting, but most of the entries made in the spaces of the blank form were made with a typewriter. Mr. Schenck testified that this clause was in the contract when signed; that, from the beginning, Trotter informed appellant's broker that the timber had been sold; that, after looking at the lands, appellant's broker exacted $10,000 in cash from Trotter, in addition to the first proposal of exchange, because the timber had been sold; that the original contract had been in his office, though lost, since its execution, and that no change had been made in it; that, during the time he was searching for the contract, he told Mr. Bloodworth he did not remember how long the timber contract would run; that he found the contract when Bloodworth and Bates were present, in a pigeon-hole to his desk, after having made a diligent search; that he had no interest in the result of the case.

It is contended that the finding of the chancellor to the effect that appellant purchased the lands with full knowledge of the existence of a timber contract expiring March 1, 1920, was contrary to the weight of the evidence. Both Schenck and Trotter gave positive testimony that the clause "subject to a timber contract expiring March 1, 1920," was in the contract when signed. Trotter testified that Schenck made him a copy, which he compared with the original, and that he retained the copy which included the clause. The clause was in the copy

produced by him and attached to his deposition. The clause was also in the original contract produced by Schenck and attached to his deposition. Schenck testified that the clause was in the contract when signed. Both testified that appellant's broker was informed from the beginning that the timber had been sold, and that was one reason appellant's broker required an additional cash payment of $10,000 to be made to appellant.

Bates, appellant's broker, was quite positive that no such clause was in the contract when signed, else, he says, he would have challenged it. He said he was led to believe, from the abstract and the opinion of Trotter's attorney, as well as his own, that the timber contract referred to by Trotter as being out against the land was the timber contract executed by Minta L. Scott to appellee Day, the expiration of which was December 6, 1918. It is suggested by learned counsel for appellant that there are circumstances in the evidence challenging the truth of Schenck's and Trotter's statements and lending credence to the statement of Bates.

The suggestion is made that the clause was inserted with pen and ink, while other entries were made with the typewriter. An inspection of the contract shows there are entries not challenged also made in the same color of ink and in the same handwriting of the clause in question. So, it can not be well argued that the clause was inserted after the contract was signed because entered with pen and ink. The argument would likewise exclude all other entries and changes made in pen and ink not challenged. The suggestion is also made that because Schenck did not produce the contract before the statement made by Mr. Bloodworth to the effect that he had seen a copy of it the day before in possession of Trotter, which contained the clause, but did produce the original contract immediately thereafter, is a circumstance tending to reflect upon Mr. Schenck's testimony. We are unable to draw any inference from the circumstance tending to show that Schenck testified falsely in regard to the clause being in the contract when signed.

The suggestion is also made that the statements of Trotter and Schenck should be disregarded because Trotter told Day the extension of the timber contract had been incorporated in his deeds to appellant, which was not true. Trotter, we think, sufficiently explains this incorrect statement by saying that he directed Schenck to incorporate the clause in the deeds and thought he had done so until after this suit was instituted.

It is also suggested by appellant that if a comparison of Trotter's signature on the extension contract, which was dated back to June 30, 1917, is made with the signature to the letters written prior to the execution of his contract of sale to appellant, it will appear that the extension contract was not reduced to writing until after Trotter's arm was broken in the spring of 1918. If not signed until the spring of 1918, it necessarily shows that the timber extension contract was reduced to writing after Trotter sold the land to appellant. Day testified that it was reduced to writing before Trotter sold and conveyed the lands to appellant and such also is the effect of Trotter's evidence. We are of opinion, however, from a reading of the whole evidence, that Trotter extended appellant's timber contract to March 1, 1920, before he made the sale to appellant, irrespective of when it was reduced to writing. Appellant is in no position to question the form of the timber extension contract if he had notice of it and bought subject to it. The gist of his action is that he was an innocent purchaser of the lands without notice of appellee's equities. We think the finding of the chancellor, to the effect that the clause was in the original contract at the time it was signed, is supported by the weight of the evidence. At least, after a careful reading of the whole evidence, we can not say that the finding and decree of the chancellor are contrary to the clear preponderance of the evidence.

The decree is therefore affirmed.